**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**STEVEN S.,**

       **Plaintiff,**

                                **Case No. 1:20-cv-10234**
      **v.**                           **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Steven S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

## I.    PROCEDURAL HISTORY

On January 3, 2017, Plaintiff filed an application for benefits, alleging that he has been disabled since February 9, 2016, due to a number of physical and mental impairments. R. 79,

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

112, 172−73. The application was denied initially and upon reconsideration. R. 113−17, 121−23. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 124−25. Administrative Law Judge ("ALJ") Nicholas Cerulli held a hearing on May 3, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 29−68. In a decision dated July 10, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 9, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 12−21. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 17, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 1, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On that same day, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

Under the substantial-evidence standard, a court looks to an existing

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account

3

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can
enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or
without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the
record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or
contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,
221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a
complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the
record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see
A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award
benefits should be made only when the administrative record of the case has been fully
developed and when substantial evidence on the record as a whole indicates that the claimant is
disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation
omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for
determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §
404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not

disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.*

at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")

and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not

disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the social Security Act through December 31, 2021. R. 14. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 9, 2021, his alleged disability onset date, and the date of the administrative decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bilateral carpal tunnel syndrome, cubital tunnel syndrome, and ulnar neuropathy. *Id.*  The ALJ also found that Plaintiff's diagnosed diabetes mellitus, hypertension, hyperlipidemia, obstructive sleep apnea, obesity, and adjustment disorder were not severe impairments. R. 15–16.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 16.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 17–21. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a dispatcher. R. 21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 9, 2016, his alleged disability onset date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 18. The Acting Commissioner takes the position that her decision should

be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 18.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On April 11, 2016, Eric Strauss, M.D., a specialist in hand surgery and Plaintiff's treating physician since March 3, 2016, performed a left cubital tunnel decompression and left carpal tunnel release on Plaintiff's left hand:. R. 424, 426–27, 430–31, 583–84. On July 8, 2016, Dr. Strauss performed a carpal tunnel release on Plaintiff's right hand. R. 424–25, 432.

On December 22, 2016, Dr. Strauss followed up with Plaintiff. R. 436–37. After conducting a physical examination, Dr. Strauss noted as follows:

> He is seen in follow up today after carpal tunnel release. *His right side has been slow to heal.* He has intact sensation with no sign of dystrophy, inflammation, or infection. His wound is well-healed. Tendon function is intact. Vascular status is intact. *He has reached a plateau in his recovery. He is capable of return to work with restrictions [on] repetitive right hand use.* I have recommended a neoprene sleeve to be worn intermittently. He is discharged.

R. 437 (emphasis added).

On January 5, 2017, Dr. Strauss completed a two-page, check-the-box and fill-in-the-blank form issued by the State of New Jersey – Department of Treasury, Division of Pensions and Benefits. R. 426–27, 583–84 (duplicate). Dr. Strauss noted the following physical findings: positive Tinel's sign over ulnar nerve and mild mobility of ulnar nerve at the left elbow; positive Tinel's sign over median nerve of the distal forearm; Phalen's test and nerve compression test positive on left side. R. 426, 583. Dr. Strauss also referred to EMG testing, which was interpreted as follows:

8

This EMG study is abnormal.

1. A bilateral median neuropathy is noted across the wrists consistent with a moderate bilateral chronic carpal tunnel syndrome.
2. A left ulnar neuropathy is noted across the elbow consistent with a mild to moderate left chronic cubital tunnel syndrome.
3. No acute right ulnar neuropathy is noted across the elbow.

R. 428−29. Dr. Strauss diagnosed bilateral carpal tunnel syndrome and cubital tunnel syndrome on the left. R. 427, 584. Dr. Strauss checked the box marked "Yes" in response to whether Plaintiff is "now totally and permanently disabled and no longer able to perform his or her assigned job duties[,]" explaining as follows: "Permanent Restriction of no repetative [sic] [right] hand use." *Id*. In response to the question whether Plaintiff's disability was likely to be stable or progressive, Dr. Strauss checked the box marked "Stable" and indicated that there was no possibility that Plaintiff's conditions might improve to a degree sufficient to enable him to perform his job duties. *Id*. Dr. Strauss further indicated that the restriction on "repetative [sic] hand use" was the reason that Plaintiff was permanently and totally disabled. *Id*.

## V.    DISCUSSION

Plaintiff challenges, *inter alia*, the ALJ's evaluation of Dr. Strauss's opinions. *Plaintiff's Memorandum of Law*, ECF No. 14, p. 24. Plaintiff's arguments are well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34,

42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[3] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and

---

[3] As previously noted, Plaintiff's claim was filed on January 3, 2017. For claims filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform sedentary work "except occasional pushing and pulling with the upper extremities; *frequent reaching, handling, fingering, and feeling*; and frequent exposure to vibration and hazards such as unprotected heights and moving machinery." R. 17 (emphasis added). In reaching this determination, the ALJ, *inter alia*, assigned "little weight" to Dr. Strauss's opinion, reasoning as follows:

> Additional opinions have been accorded little weight. These include conclusions of Eric Strauss, M.D., who in January 2017, indicated that the claimant had positive Tinel's at the left elbow, with mild mobility of the ulnar nerve, as well as showing positive Phalen's for the left side. This issue was described as stable. Dr. Strauss concluded that the claimant was permanently restricted regarding the ability to engage in repetitive hand use. (Exhibits 4F and 5F). It is noted that in the residual functional capacity assessment, the claimant is limited to no more than frequent use of his hands, which considers Dr. Strauss' opinion regarding no repetitive hand use.

R. 20.

Plaintiff challenges the ALJ's consideration of Dr. Strauss's opinion, arguing that the ALJ did not adequately explain the consideration given and the weight assigned to this opinion. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 24. Plaintiff also specifically contends that subsequent reviewers cannot discern how the ALJ actually considered this physician's opinion because, although the ALJ assigned only "little weight" to Dr. Strauss's opinion, the ALJ also stated that the RFC "considers" Dr. Strauss's opinion that Plaintiff was permanently restricted from engaging in repetitive hand use. *Id.* Plaintiff further argues that no reasonable interpretation could find that Dr. Strauss's limitation of no repetitive hand use is consistent with the ALJ's limitation to "frequent" manipulation. *Id*. at 21–22, 24 (citing R. 17, 584). *See* SSR 83-10, 1983 WL 31251, at *6 ("'Frequent' means occurring from one-third to two-thirds of the time").

Plaintiff's arguments are well taken. As set forth above, the ALJ simply stated that he assigned "little weight" to Dr. Strauss's opinion without explaining why the opinion of this

treating hand specialist, *i.e.,* that Plaintiff was permanently restricted from engaging in repetitive hand use, was not entitled to controlling weight. R. 20. Although an ALJ is free to determine whether and to what extent a treating physician's opinions should be credited, the ALJ cannot reject evidence from a treating physician "for no reason[.]" *Morales*, 225 F.3d at 317 (citation and internal quotation marks omitted); *see also Fargnoli*, 247 F.3d at 43 (stating that when an ALJ "weigh[s] the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.").

Moreover, the ALJ's assessment makes no reference to Dr. Strauss's findings following his physical examination on December 22, 2016, that Plaintiff's "right side has been slow to heal" and that he "has reached a plateau in his recovery." R. 437; *see also See Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records"); *Pastuch v. Comm'r of Soc. Sec.*, No. CV 17-989, 2018 WL 2018063, at *9 (D.N.J. May 1, 2018) ("The ALJ must not ignore the opinions of treating professionals or cherry pick evaluations, diagnostics, or opinions that support a particular conclusion."); *Cintron v. Comm'r of Soc. Sec.*, No. 2:13-CV-7125, 2014 WL 6800613, at *10 (D.N.J. Dec. 2, 2014) ("An ALJ cannot rely on portions of documents from the record without also refuting 'the statements made therein that contradict his findings.'") (quoting *Cadavid v. Comm'r of Soc. Sec.*, No. CIVA 12–7214, 2014 WL 839453, at *9 (D.N.J. Feb.26, 2014)); *cf. DeJesus v. Colvin*, No. CIV. 14-4798, 2015 WL 4902159, at *8 (D.N.J. Aug. 17, 2015) ("Adopting only portions of an opinion

that support the ALJ's RFC findings while failing to address those portions that contradict them . . . will not suffice as an adequate explanation.") (citations omitted).

In addition, the ALJ's statement that the RFC limitation to "frequent" use of Plaintiff's hands "considers" Dr. Strauss's opinion regarding "no repetitive hand use" is, at best, confusing in light of the ALJ's earlier statement that Dr. Strauss's opinion was entitled to no more than "little weight." Certainly, Dr. Strauss's limitation of no repetitive hand use would presumably preclude frequent hand use. *See Boone v. Barnhart*, 353 F.3d 203, 207 (3d Cir. 2003), as amended (Dec. 18, 2003) (remanding where "the job involves frequent reaching, handling, and fingering, which Boone's limitation on repetitive hand activities may preclude"). In short, the ALJ's limited explanation simply does not allow this Court to understand and assess the basis for the ALJ's discounting—and the extent to which he discounted—Dr. Strauss's limitation of no repetitive hand use. *See Jones,* 364 F.3d at 505 (stating that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *Zigarelli v. Comm'r, Soc. Sec. Admin.*, No. CV 18-12690, 2019 WL 3459080, at *4 (D.N.J. July 30, 2019) ("The ALJ, however, does not explain in what way he found the limitation to be vague, nor does he cite to specific contradictory evidence in the record. . . . [and] fails to explain how the opinion and treatment note are inconsistent with each other.[] Thus, the Court cannot determine whether the ALJ properly discounted Dr. Ranawat's opinion in this regard."); *Hines v. Colvin*, No. CV 18-13828, 2018 WL 6313499, at *4 (D.N.J. Dec. 3, 2018) ("These vague citations to the record are insufficient to 'provide a clear and satisfactory explication" of the weight given to Dr. Allegra's opinion in order to assist a reviewing court in "perform[ing] its statutory function of judicial review.'") (quoting *Cotter*, 642 F.2d at 704−05).

Thus, the Court cannot meaningfully review the ALJ's RFC finding and determine whether substantial evidence supports that finding at step four. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis.").

The Acting Commissioner contends that "[t]he ALJ also gave little weight to Dr. Strauss's opinion for the same reasons that the ALJ" assigned little weight to another treating physician and points to other portions of the record that she believes support the ALJ's assessment of Dr. Strauss's opinion. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17, p. 16. The Court is not persuaded. The ALJ did not rely on this rationale or evidence in weighing this treating physician's opinion. R. 20. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

15

This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of the opinion of the treating hand surgeon Eric Strauss, M.D. Remand is appropriate, moreover, even if further examination of Dr. Strauss's opinion again persuades the Acting Commissioner that Plaintiff is not entitled to benefits; that determination is for the Acting Commissioner—not this Court—to make in the first instance. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks.").[4]

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this Opinion and Order.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  January 12, 2022                           *s/Norah McCann King*
                                                        NORAH McCANN KING
                                                UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Strauss's opinion and the RFC, the Court does not consider those claims.